The next case on the calendar is Arnold v. First Citizens National Bank. May it please the Court, my name is Greg Massetti. I'm an attorney with LeClaire Ryan. I'm appearing on behalf of Michael Arnold, special counsel to Michael Arnold, the Chapter 11 trustee for Cornerstone Homes, Inc. In this action, the trustee seeks a declaratory judgment that the bank's claims are unsecured. The bank's claims are based upon certain purported assignments of mortgages. Although the assignments of mortgages contain language assigning the mortgage together with the bond or obligations described in the mortgage, the underlying notes were negotiable instruments that were not endorsed to or ever delivered to the banks. The question is, can you have a delivery, a non-delivery of the underlying instruments still having its assignment? Exactly. And of course, that raises the question of what actually is assigned. There was something purported to be assigned, and what rights were assigned? Was it the right to enforce? Was it the right to just obtain the notes? Was it a right to endorse, get an endorsement if you had the notes? So what is your position on that score? As to what was assigned, Your Honor, it was a claim to ownership of the person could presumably use that assignment to go find the notes and sue that person to get possession if they wanted to endorse. That's correct, Your Honor. And then once they had possession, even if the notes were not actually physically endorsed at that time, if they were a holder, they could then compel endorsement or they could go get the endorsement. That's exactly what the Uniform Commercial Code provides for. Right. But that's Section 203, correct? I believe it's 201. No, I'm talking about 203, which was the Uniform Commercial Code. It's not part of McKinney's. New York has expressly not adopted 203. And 203 seems to make it clear that an instrument is transferred when it's delivered by a person other than the issuer for purpose of giving it to the person receiving delivery the right to enforce the instrument. But that is not what 201 says. In fact, it was written, I think it says in 203, it says that 203 is based on, in the official comment, former Section 3201, which states that a transferee receives such rights as the transferor had. Former Section 3201 did not define transfer. Subsection A defines transfer here in 203 to cases in which possession is delivered. But New York hasn't adopted that one. That's correct, Your Honor. Sorry, you were referring to the revised Article 3, 303. That has not been adopted by New York. Forty-nine other states have adopted it. Yeah, I know that. Do you argue here that this is just a clarification, and that, in fact, delivery was required, but it just wasn't, you know, it wasn't spelled out in 201, but it's still required? Absolutely. I can see you would have a basis for doing that, because an assignment would leave the ‑‑ an assignment just by a document says I assign would leave a ‑‑ if the other side's position is accepted, would leave the S&E the ability to enforce, but then also there could be a holder of due course in the notes themselves who would then have the note, and then it could be endorsed, and they could also go and enforce the notes, and then you'd have double liability. And that's the argument in favor ‑‑ that's why the ‑‑ I think why the other states have gone the way they've gone, to make that clear and to deal with that policy issue. Your Honor, revised Article 3 in that section, 3203, does add a definition of transfer to make it clear that delivery is a requirement. That delivery requirement is embedded in current Article 3 for New York, in the original Article 3. It was also embedded in the negotiable instruments law that predated the current version of ‑‑ Case Collier or something like that? Collymore? Collymore, yeah. That seems to indicate that there is a difference between a ‑‑ that there could be different ‑‑ there could be a negotiation and there could be other transfers. Yes. Collymore, Your Honor, is wrong for a number of reasons, but to begin with, the term negotiable instrument doesn't appear anywhere in Collymore, and Collymore didn't undertake any analysis under Article 3 of the code. Can I just ask before you get to Collymore, both parties seem to assume that we have a negotiable instrument here, and I was just pausing on that, because I understood that a negotiable instrument has to contain this conditional promise or order to pay and no other promises, and that, as I understand these individual notes, they provide for default where the borrower fails to do anything he's obligated to do under the mortgage, and the mortgage contains all sorts of promises. So is it clear that these particular notes attached to this particular mortgage are negotiable? Your Honor, we have assumed that from day one, that they're negotiable instruments. Is there a ‑‑ I mean, you're not disputing that there are a lot of promises contained in the mortgages that seem to be incorporated into these notes? I would have to look at the language specifically in the notes to address that issue, Your Honor. In terms of what happens to these notes, the original lenders are all paid off, right, by the consolidated ‑‑ what happens here is there used to be a lot of people who held individual notes with individual properties and individual mortgages. After these transactions, the bank has lent a lot of money and secured by all the mortgages, but that money is used at least in part to pay off the original lenders, right? Yes, Your Honor. So what puzzles me, you know, maybe there's a problem if the notes get negotiated to someone else, but the original lenders, those ‑‑ in other words, the banks don't need those notes because the bank presumably has some other promise to pay, doesn't it, from the bank? The only reason they need the notes is to block, they need to get them and rip them up. They don't want them negotiated to the banks. Your Honor, as negotiable instruments, there is absolutely no right to enforce a negotiable instrument unless you have possession of it, and that is the mis ‑‑ Right, but the banks don't want to enforce those notes. The banks just want to get them and rip them up so nobody else can come and present them to the banks. The cornerstone. That raises the issue, Your Honor, with respect to the consolidated notes under which they assert claims. Before I get into the consolidated notes, I think it would be helpful at least briefly if the Court would indulge for me to just go through three different scenarios. In other words, you'd like to make your argument. Let's assume that I have a million‑dollar promissory note. It's a negotiable instrument and it's payable to my order. Now, under the first, as a holder of the note, under 301, I am entitled to, as a holder, to enforce it. I can discharge it. I could consolidate it. I can do anything with the note because I am its holder. Now, if for whatever reason as part of the business transaction I'd like to transfer this note to Judge Walker, I can endorse the note and deliver possession of the note to all the rights that I held as a holder. That's a negotiation under 3202 of New York's Uniform Commercial Code. Now, what if I don't endorse the note? What if I just transfer, physically transfer the note to Judge Walker as part of the transaction? Well, as we had discussed, under 3201, Judge Walker would receive whatever rights I had in the note. Judge Walker is not a holder because it wasn't negotiated to him. But under 3201, he'd have whatever rights I had. Now, that would mean Judge Walker would have to explain why he's in possession of the note. It would be subject to any defenses because he wouldn't be a holder in due course. And as we previously had discussed, if it hadn't been endorsed and you had given value, if Judge Walker had given me value for it, Judge Walker would be entitled to my endorsement on the note. That's 32013. So, that's scenario two. Scenario three, I give Judge Walker not the million-dollar promissory note, but I give him a written assignment of the note. Now, what rights has Judge Walker received? Well, under the fundamental principle of an assignee can't have any better rights than an assignor, if Judge Walker hasn't received my million-dollar note, he has no rights to do anything with it. The only rights that I had were derived from my possession of it. I didn't have any right, without possession of the note, to enforce it, consolidate it, discharge it, to do anything with it. So, it's similar if I were to assign two tickets to Hamilton to Judge Walker. If I didn't give you the tickets, you're not going to get in without the tickets. My written assignment isn't going to let you in. This may be following on on Judge Lynch's question, but if Judge Walker loaned you money, and those loans are reflected in a loan agreement, and you also granted him a separate mortgage—forget the individual notes—you also granted him a separate mortgage with respect to that transaction, this doesn't appear to me to be, at least from the flow of money, a situation in which the individual notes are doing any work, other than possibly avoiding the mortgage recordation tax. That the banks loaned you money, there were separate mortgage agreements, separate loan agreements, why do we have to worry about the— Well, they weren't separate—to be clear, they weren't separate loan agreements. They were consolidated. They were consolidated in these consolidation, extension, modification agreements, but those do not seem to be doing any work here. It seems to be about taxes. Your Honor, they are the obligation. It's not a new obligation. It's not a separate independent obligation. They're consolidating my million-dollar note with other notes, and you can't do that unless you have possession of it. For example— Am I right in understanding that the banks loaned you cornerstone money, cornerstone used that money to pay off the individual notes? Your Honor— That's the flow of money. Not entirely clear to me with respect that it was the same for each transaction. It might be different for CPC. Yeah. Whether it went directly from the attorney to the individual lenders, whether it flowed through cornerstone's attorney or the bank's attorney, I don't know that it was the same for each one. But, Your Honor, just if I could get back to the consolidated note issue, because it's an important issue, and it's the reason why the consolidated notes aren't the foundation for any claim that the banks can enforce. If, for example, I had a note, a million-dollar note, but there was something about the note that put me on notice that there was some fraud or illegality with respect to the note, I can't take another one-dollar note, then create a new consolidated note, and somehow cleanse myself of that problem and then say, well, I'm a holder in due course because I have a consolidated note. You have to look at the underlying obligations of the consolidated note to understand what rights the banks, in this case, have. One question in my mind is, here we are wrestling with this question of state law and the application of Bikinis and the Uniform Commercial Code, and we don't have an opinion by the New York Court of Appeals. And so what naturally occurs here is because we have a relationship with the New York Court of Appeals, and they respond to our certification requests, they take them very seriously, and they usually are fairly prompt in deciding whether to accept certification or not, why shouldn't this case go to the New York Court of Appeals for a decision? I would think that would be appropriate, Your Honor. In fact, in the Aurora decision, the Court of Appeals decision in Aurora, cited in our brief, it's interesting because in that decision, the Second Department, both the majority decision in Aurora and the dissenting opinion in Aurora, both cited the rule, this Colleymore rule, that either a written assignment or a physical delivery of the note may be sufficient to transfer the obligation. So both the majority and the dissent cite the same rule. Now this, and the issue goes to the Court of Appeals, the Court of Appeals doesn't cite that rule. So this rule has been cited by numerous cases. And the Court of Appeals doesn't take the opportunity to cite that rule. It's interesting. And instead, what the Court of Appeals hopes— Your position is that all those cases that recite the rule just say it, that there's not a case, and I'll be interested to hear if the other side disputes this or has a case, there's not a case where a court actually says, here's a case where there is a naked assignment. There is no transfer. But because of the Colleymore rule, it's either one or the other, and the assignment works. And I'll be interested to hear whether they have a case that says that. But your argument, anyway, is there is no such case. These are just bland recitations of a purported rule that aren't supported by any actual holdings. Do I understand your position correctly? Prior to Colleymore, the decision in 2009, there were no cases that supported that decision. Now courts have taken the Colleymore rule, and they've analyzed whether—based on the Colleymore rule, they've analyzed whether or not a written assignment is sufficient. Unnecessary. They don't have to. A written assignment hasn't been sufficient when New York was under the negotiable instruments law. It's not—the terms, plain and unambiguous terms of Article III make it clear that it's referring to a physical transfer of an instrument in connection with current Article III. Revised Article III clarified that, yep, when we did the original Article III, we meant—we meant physical transfer. Well, that's what they meant. Physical transfer. That's what the Uniform Code Commissioners meant, but they don't make law. They just recommend to the states, is there any explanation for why New York has stood alone or virtually alone in not adopting this clarification and solving our problems for us? Not that I'm aware of, Your Honor. It hasn't come up and then been rejected, or— I understand it's been—it's been bouncing around. I don't know— Bouncing around. Yes. I don't know why it's been with the state. There's never been an actual up or down vote in the—in the legislature. I don't know the answer to that. But just to be clear, though, it—the adoption of Revised Article III is not necessary to come to the same conclusion that has been in place since prior to the current version of Article III. There's never been any statute regarding negotiable instruments or any case prior to Collymore that said a negotiable instrument—a right to enforce a negotiable instrument can be transferred solely by a written instrument. Morning, Your Honor. As may it please the Court, my name is Ronald Terenzi, and I am an attorney for Community Preservation Corporation, referred to as CPC. What happened to the notes? I mean, why aren't the—weren't the notes physically delivered? Your Honor, it's really a course of the way the industry works. Consolidated mortgages happen all the time. They don't typically request the physical delivery of the notes. They just request the assignment. There is a new obligation, which is a fact that is not in any of the cases that are cited where there was an actual new obligation, a note from the debtor to the lenders. This—this borrower is obligated to pay the lender. There's not that type of obligation in any of these cases. So there is a new obligation, a new note. And they consolidate—what they're really trying to do is consolidate the mortgage. As Your Honor pointed out, this is to save mortgage taxes for the borrower, not for the lender, because the borrower is always obligated to pay those mortgage taxes. So it saves the borrower money to do it this way. Now, the trustees' interpretation—this is really an interpretation of transfer in—in Article III of the UCC. And the trustees' argument as to how that should be construed makes perfect sense in isolation. However, there are factors that need to be considered by this Court in interpreting this. One of them, as—as has come up, is the fact that New York has not adopted the revisions from 1990, which would have required delivery in order to have it transfer. That was rejected. The other thing— It was rejected? In what way? It was not adopted. Let me ask you a question. It was not adopted. Not adopted. All we know now is it might have been bouncing around, but we don't know what that means. We know that it's been not adopted in the 27 years since it came up, which is fairly telling. That's a lot of bouncing. That's a lot of bouncing, yes, Judge. The other thing to consider is—is Section 102 of the UCC, which says interpret it liberally. Then Section 103 of the UCC says consider other laws that impact on this, and unless completely displaced by the UCC, you have to give those other laws their due in interpreting the UCC. Well, here, we don't have just any negotiable instrument. We have a specific negotiable instrument, and that's a mortgage note. And these mortgage notes are specifically dealt with in New York's real property law. And our argument is that you cannot look at the UCC in isolation when you have laws specifically dealing with the mortgage notes. So Article 8 of the New York real property laws, entitled Conveyances and Mortgages, Section 249.9, titled Construction of Clauses and Covenants in Mortgages and Notes, specifically provides for the assignment of mortgages and mortgage notes—specifically provides for it. Section 258 of the real property law, this is a— Providing for the assignment of mortgage and mortgage notes doesn't tell you how to effectuate the assignment, does it? It says that you can assign it. It is the appellant's argument that— Nobody says you can't do that. Your adversary's not saying that you can't assign it. It's a question of how you do it. No, but he is. He's saying you can't transfer it by written assignment. He is arguing exactly that, Judge. So you're drawing a distinction between assignment and transfer? What we're talking about is how to interpret transfer under the UCC, and he's saying it's got to be by delivery, and it can't be by—simply by written assignment. Right. And the real property law says it can be by written assignment, and in fact, 258— I didn't get that. I'd have to go back and look at it, but I didn't know whether it says it can be by written assignment to the exclusion of delivery. You know, you just said you can assign it. Yes. Okay. Yes. Section 258 really gives a panoply of forms that you can use that New York State has said these are the accepted way to do that. At O is the form that you used for a consolidated note in mortgage. It has identical language as what was used here. Section 275.2c speaks to a situation where the original lender assigns the note and mortgages and assigned obligations are consolidated. Exactly what we have here. So if you were to adopt what the trustee is saying, that transfer can only be by delivery, it would void all these sections of the real property law. Would it? Absolutely. No, it's a question of what you have after you get the assignment. You have the right to go and get the note. I mean, he would argue, I think, that once you get the assignment, you still can't enforce. You have to get the note and get it endorsed to enforce. What Your Honor is referring to is the exact same scenario which would occur if you got delivery without an endorsement under the UCC. What you have is the right to get the endorsement. We're not talking about, we're talking about written assignment. And that's all that Collymore and his progeny provide, is that it can be by physical delivery or written assignment. The real property law says it can be done by assignment. They're arguing it cannot be done by assignment, which would- When you say it can be done by- The transfer of the mortgage obligation. The transfer of the mortgage obligation. The note. Then where are you after that? I mean, what he's saying is you can't enforce it. There's a distinction between getting something and being able to enforce it after you've gotten it. And once you have an assignment, then you have some rights that you didn't have before. But the question is, what are those rights? That's not what the trustee is arguing. The trustee is arguing that that only occurs upon delivery. No, but I think that, isn't he suggesting that you can't enforce unless you have delivery, but you can certainly have an assignment and it gives you a right to ownership. And that right to ownership gives you the right to obtain the notes from someone. I think that's essentially what he's- That's what the UCC provides, that if you get delivery without endorsement, you have ownership and rights to get an endorsement. We're talking about an assignment, not delivery without endorsement, but an assignment. And I believe that the trustee is arguing that you can't have a transfer of an obligation by a written assignment. And what your honors describe in- The assignment normally in the traditional sense is you stand in the shoes of the person who assigned. But this has different aspects to it because there are endorsements. There's a negotiation component that one would think normally would play and would have some play here. And your assignment might give you the right to do something, but whether or not you could enforce that right might depend upon physical delivery and endorsement. That's the question. That's exactly what the trustee is arguing. But I'm saying that real property law appears to give you the rights to enforce simply by assignment. Can I ask a question about the real property law? Certainly. One of the premises of the trustee's argument is that the mortgage must follow the debt, and so you need the note to enforce the mortgage. Absolutely. Well, I'm wondering if that is so absolute. The section, real property law section 258 provides that the use of the following forms of instruments for the conveyance of mortgage of real property is lawful. So if you're relying on 258, you're saying that 258 allows the assignment of the mortgage. Now, the bank has their own note, right? The bank doesn't need the notes of the original lenders to demonstrate the indebtedness of Cornerstone. That's correct. The bank has an assignment of the mortgages, and under 258, you seem to be arguing the mortgages are assigned to the bank and those assignments are valid. Now, maybe Cornerstone has some kind of problem, or maybe the original creditors have some kind of problem with negotiable instruments floating around, but I'm not sure whether that doesn't solve the problem in the bankruptcy, which is the bank is asserting that it has a secured interest, that its note, Cornerstone owes us a million dollars, is not an unsecured thing. It's secured by mortgages which were properly assigned under section 258. Is that the argument? That is one of the arguments that I make, Judge, that we have an independent note and the collateral, the security instrument wasn't assigned, and there's no argument that that can be assigned. You don't need to worry. If that argument holds up, and it seems to be inconsistent with this proposition that the mortgage can't be enforced unless the debt that created the mortgage goes with it, but maybe there's a separate basis for saying the mortgage can be conveyed. 258 doesn't say, at least the part that I was looking at, maybe there's something somewhere else, but that part doesn't say a negotiable instrument that supports a mortgage can be assigned by a note. It just says the mortgage can be assigned by written assignment. And that's the last point in our brief, is precisely that argument. And Your Honor's the debtor cornerstone here would be relieved in excess of $20 million worth of debt because the lenders couldn't enforce it. And the old lenders, the individual lenders, have already been paid on their debts, so they would be completely relieved of this in excess of $20 million obligation if we were to apply this argument. No, they wouldn't be completely relieved because if they had, it would be awkward, but if they could go after the original creditors, get the notes, and come after cornerstone. And since they are bankrupt, all that really is at stake is whether the banks get priority over all the other creditors, right? I mean, that's what we're really talking about here. They're not being relieved of anything. It's just a question of are the banks going to be first in line because they are secured as opposed to whatever other creditors are out there. It's whether there are any mortgages that can be enforced at this point. Yeah. And if we can't enforce those mortgages, certainly the old lenders can't because they've been paid and satisfied. Thank you, Your Honors. May it please the Court. My name is Alan Hill of the firm Phillips Lyle, and I represent First Citizens Community Bank. Full disclosure, I doubt that you recall, but I was a student of yours many years ago. Well, we'll see what you learn. You didn't learn anything from me about the UCC Act. No, I did not. Ultimately, when the trustee argues that the notes of the banks are not enforceable, what it really comes down to is standing. There's no dispute here in the First Citizens, CPC, Elmira Bank, lent the debtor money. The money was used for some pretty good reason, at least most of it, to essentially refinance the debt. So what we're talking about is standing here. First Citizens and I believe the other two banks, they have two things. They have the assignment, the written assignment, and they have a new note. And it's a new note that is a negotiable instrument on its face, and additionally, it includes gap financing. So there was an additional gap financing that was combined to create this new note. My view is either of those creates standing. It doesn't mean that the trustee wouldn't have defenses to the note, but the assignment alone, I believe, even independently of the UCC, allows me to get into the courthouse in front of a judge to try to enforce it. And then, you know, then there can be the argument, well, since you don't have a note, maybe we don't owe you, you know, we don't owe the money, and that could be, you know, that can be determined by a trier of fact. But I think there's standing here. And as long as we have standing, I don't think the trustee's position holds, because, again, there's no dispute that the, you know, the loans were actually made, that this hasn't been assigned to anybody else, and, you know, the debtor prior to the bankruptcy made payments on these loans for nearly a decade, I believe, and then the trustee during the bankruptcy case has continued to make adequate protection payments on account of the loan. But am I mistaken about what's really at stake here? I didn't think that, and maybe I'm wrong, that the trustee was disputing that a debt is owed to the banks. I thought the question was just are the banks unsecured creditors, or are they secured by the mortgages? That's, yeah, there is no, there's no, I don't think there's a dispute that money's owed. What happens is, as their argument, the implication would be that essentially the security would be avoided. So, yes, if the trustee is successful, we all go into the unsecured creditor pool and we share a pro rata. Right. So, excuse me, I took your argument about standing as maybe something that's significant in the broad run of cases, but in this case, I didn't think anyone was saying that either that you lack standing to try to collect on the debt or that there's anything invalid about the debt. It's just a question of whether the mortgages were successfully transferred, and thus a question of whether you are secured creditors or not. Is that? The purported avoidance that would cancel our lien is based on, you know, the hypothetical lien creditor, but it's, ultimately the argument really comes from the MERS cases that cancel came out, you know, kind of in the time of Lehman, you know, the Lehman case, 2007, 2008, when that became, you know, a pressing issue, a politically charged issue, and a lot of the problem was on these residential mortgages that, you know, what the real problem was is that banks weren't being accountable. You know, there were political issues there, but what was happening in those cases was somebody was either showing up with a mortgage and no note and nothing else, or they were showing up with a mortgage and a note, and the note said that somebody else was owed the money. This isn't the case here, but the way that our lien gets avoided is on the basis that we don't have the standing to enforce it. I think that either the assignment or the new note that we have gives us the standing. It doesn't mean that we win, but it means that a court lets us into the threshold, lets us get up, get in front of them and argue it, and then the trier of fact determines it. One other issue that I wanted to, I know you asked about certification, whether this should be certified to the state court. There's two answers to this. You can, but you can't get it. It's clearly within your discretion. The test that this court has set forth, one of the factors is that there's an actual split of opinion, and there is no split of authority in the New York State cases. In fact, the plaintiff has been in a position where they have to argue that a small army of cases are all wrongly decided, but it's not like that it's unclear how the New York State court's opinion . . . The army of cases consists of a general and a soldier. If the general makes a mistake, the soldier is not going to follow. That could be the way one would look at this. I don't know. That's my question. Also, I noticed that the briefs are all, and the lower court anyway here is saying, what I'm doing is, what we're being asked to do here is predict how the New York Court of Appeals would decide it. They don't have the power to certify at the district court level, but we do. The prediction is not really required on our part if we really think that it would be helpful to get the decision out of the court itself. Any other questions? Just a question that I raised with your adversary. In all of these 100 plus cases that cite Collymore or in Collymore itself, is there any case in which a court has actually confronted a situation where there was no negotiation and delivery, but there was an otherwise effective written assignment and then held? Well, but according to Collymore and according to the New York's version of the UCC, the written assignment is itself sufficient? Judgment for the person, for the S&E? Well, I believe there's the Verna case, which was determined by the Northern District, where the, to answer your question, a lot of the cases that cite Collymore don't put a lot of thought into them. That's simply true. A lot of them are throw-off sites, but there's the Verna case from the Northern District where the court did put some analysis into it and ultimately determined that you could do it either way, that either the assignment or the original note was sufficient. There's the district court decision, which is, I think in this case, which is the first one where somebody put a tremendous amount of thought into how it works, and I think, you know, to brutally paraphrase that district court case, they basically said the reason we come out the way we did is because New York State is the only one of the, is unlike 49 other states and four territories, has not adopted this, the revised UCC. As I said, I think that what each of the banks has done, and the district court case has, is sufficient to have standing anyway, you know, neither the district court, I would assume, probably didn't agree, but I don't think you really have to get to the UCC to determine that we have the right to get in front of a court to attempt to enforce it, subject to the defenses of the plaintiff. Right. Thank you. May it please the Court, my name is David McKnight. I represent Elmira Savings Bank. Judge Walker, earlier you asked whether in the event of assignment, who has authority to go forward. The New York legislature actually answered the question, and it did so, and real property law section 254.9, and in 254.9, the legislature said that the word assignment used in connection with the assignment of a mortgage must be construed, and must is a pretty strong word. That means it's mandatory, no shilly-shallying around. Be construed, to appoint the assignee as the irrevocable attorney-in-fact, and is appointed as the attorney-in-fact of the assignor, for the purpose of collecting the money that's secured by a note in mortgage or a bond in mortgage. So we know who has authority to collect, because the New York Court of Appeals has directly spoken to, or excuse me, the New York legislature has spoken directly to the issue, and it has made a mandatory rule that the assignee is the only person who can enforce the mortgage going forward. Does that go further, and say how the enforcement can occur? In other words, is this assignment sufficient to obtain enforcement, or do further steps have to be taken by this assignee? Well, 254.9 speaks to that issue also. It provides that in the event of the assignment, of an assignment of a mortgage, the assignee can use all lawful means to enforce the mortgage. That includes a mortgage foreclosure. In a bankruptcy case, that means standing in the bankruptcy court as a secured creditor under Section 506A, or 102.2 if there's no liability, or 101.5 as a creditor to enforce the obligation. So I believe that specifically answers the question of my colleagues. Another question asked was, are there any cases in which a court has held that an assignment alone is sufficient? And the answer is, yes, there are, and they're cited in our briefs. The most recent of the cases, Wells Fargo Bank against Walker, where the assignment said, was an assignment of the bond and mortgage, note or obligation described in the mortgage, and the Court of the Appellate Division found that the assignment was necessary because there was inadequate proof of delivery. Second case is U.S. Bank N.A. v. Econde, 13683.887, St. Louis, Missouri. And the court did the same thing. The Appellate Division found inadequate proof of delivery and relied solely on a written assignment. Now, in this case, ESB has a particular argument to make, and I don't know that it applies to any of the others. There was a consolidation, extension, and modification agreement. And in that extension, modification, and extension agreement, there was a provision, and it's at the record 431 paragraph Roman numeral 5, that provides, there is no defense, offset or counterclaim to the mortgage. Now, in ESB's case, we're not even relying on the consolidated note, because that note was consolidated a second time in 2011. ESB claims that not only was that a ratification, which is a principle of law that's not covered by the UCC, but is authorized to be taken into account as a supplemental validating principle under Section 1103. And in that consolidation agreement, the same language appeared. There is no defense, counterclaim, or offset to the consolidated note or mortgage. So given that, whatever you may decide as to the other parties, and I think that you should affirm as to the other parties for the reasons I pointed out in answering your questions, ESB has a special ground to stand on. Thank you very much, unless you have other questions. Greg Musetti again is special counsel to the trustee. Your Honor, if I could, Your Honors, if I could just address several of the issues that came up. First of all, there was some arguing that a negotiable instrument couldn't be transferred by an assignment. That's not the argument. As, you know, to rely on the hypothetical we had talked about before, if my assignment was given to Judge Walker along with physical possession of the note, that would be appropriate. The issue that we have is the issue in Collymore, where it is not. That's where I just transfer the assignment itself. That's what we're saying you can't do. But certainly if the assignment accompanies the note, and that's the way, as an aside, that's the way most of them are done. Contrary to what counsel had suggested, if you look at all the consolidation agreements that are in the record, there's a specific provision that says if you are selling your loan to Fannie Mae, you have to include all the original notes. That's why they're there. And that one of those is in the record at A623. Your Honor, I did look quickly at the note. You raised the question about whether or not it was a negotiable instrument, because incorporated terms of the mortgage. The only term I found was a cross-default provision, which is fairly common. It's if you default under the mortgage, that is considered a default under the note. So I do believe that those are negotiable instruments. I don't think anything in there changes that. There was some discussion about, Your Honor, you had raised it, whether or not the assignment of the mortgage in and of itself under the RPL was sufficient to transfer the obligation. That has never been the law. Going back to the Merit Case Court of Appeals over 100 years ago, through the most recent decision by the Court of Appeals in Aurora, it is well settled in New York that the mortgage always follows the note. The reading of the RPL to suggest that the assignment of mortgage would be sufficient would result in the note following the assignment of mortgage. That's just not how any court has ever interpreted that working. And in fact, just to reaffirm, in Aurora most recently, the court stated that the note, not the mortgage, is the dispositive instrument that conveys standing to foreclose under New York law. We do not, again, this is an issue where we're challenging the secured status of the claim. We're not arguing that there is no liability. That's just not, we're not saying that. We're not going to take that position at some point, but that's not the issue that's before the court. The issue that's before the court is just whether or not the banks have secured claims under the mortgages. Counsel had suggested that standing under the GAAP note and the GAAP mortgage would somehow give them standing, it would give them standing to enforce the GAAP note and the GAAP mortgage. We're not contesting that. Again, this is related to the consolidated note, the consolidated mortgage. Two cases, well, let me address this, if I may. RPL 2549, and this relates to the attorney in fact provision. Just like by an assignment, I can't, by the assignment itself, convey a right to enforce that note. 2549 doesn't change that. It incorporates, it makes someone an attorney in fact for purposes of enforcing note where they have possession of the note. That's the lawful ways and means. And that, in fact, is demonstrated in the Aurora case. And that's, in that case, Deutsche Bank was the owner of the note. It had granted a power of attorney to Aurora to enforce the note. And the most important part about all of that is that Deutsche Bank gave possession of the note to Aurora prior to Aurora commencing the foreclosure action. Counsel cited two cases as well, Walker and Akande, for the proposition that an assignment in and of itself is sufficient to transfer the obligation. That may be the holdings of those courts based on Collymore and its progeny. However, in both of those cases, the plaintiff submitted evidence that it was in possession of the notes as well. Unless the court has anything further, I have nothing to add. Thank you all. Very helpful. That's the last argued case on the calendar this morning, so I'll ask the clerk to adjourn court.